## City of Lowell *vs.* County Commissioners of Middlesex.

Middlesex. January 17, 1888. — March 6, 1888.

Present: Morton, C. J., Devens, Holmes, & Knowlton, JJ.

*Tax — Appeal — County Commissioners — Abatement — Notice — Month — Complaint — Amendment — Evidence — Expert — Certiorari — Proceedings and Practice.*

An appeal lies to the county commissioners, under the Pub. Sts. c. 13, § 41, upon the refusal of assessors to abate the tax of a corporation after the tax commissioner has fixed a less value upon its real estate and machinery, although the corporation without excuse has omitted seasonably to file a sworn list of its estate with the assessors, as provided by c. 11, § 72.

Notice should be given by assessors refusing to abate a tax to the corporation, and the month within which, under the Pub. Sts. c. 11, § 71, complaint must be made to the county commissioners for an abatement, will begin to run from the date of such notice.

County commissioners may allow an amendment to such a complaint made by a corporation, the effect of which is to limit it to certain parcels of its property.

On such a complaint, or on an amendment thereto, it cannot be shown that any of the property of the corporation has been undervalued by the assessors.

At the hearing on such a complaint made by a manufacturing corporation, evidence of the value of its land for manufacturing purposes, and of the value of water power in another place, the conditions in the two places not appearing to be unlike, is admissible.

Whether a witness is qualified to testify as an expert at such a hearing is largely within the commissioners' discretion, which will not be revised on certiorari if it does not appear to have been wrongfully exercised.

Evidence was admitted at such a hearing as to the market value of the shares of the corporation. *Held*, that a writ of certiorari, it not appearing that the petitioner was prejudiced, would not issue therefor.

County commissioners, in reply to a petition for a writ of certiorari, instead of filing an answer, should make a return stating their rulings and proceedings.

THREE PETITIONS for writs of certiorari to quash the proceedings of the county commissioners of Middlesex in abating taxes assessed upon certain corporations by the city of Lowell.

IN THE FIRST CASE the petition alleged in substance that the assessors of the city of Lowell, on May 1, 1886, duly assessed a tax upon the Merrimack Manufacturing Company, a corporation having its usual place of business in that city; that the corporation did not file with the assessors a list of its estate liable to taxation in the city for that year, duly subscribed and sworn to by it, within the time specified by the assessors for bringing in such lists; that the tax commissioner of the Commonwealth determined the value of the real estate and machinery of the corporation taxable in the city for the year 1886 at a less value than that determined by the assessors, and gave it notice thereof on September 27, 1886; that the corporation applied in writing, in pursuance of the notice from the tax commissioner, on October 19, 1886, to the assessors for an abatement of its tax; that on October 28, 1886, the corporation filed with the assessors a list of all its real estate and machinery liable to taxation in the city for that year, and made oath thereto, and at the same time a hearing was had before the assessors upon its application; that the assessors on November 16, 1886, refused to abate the tax, of

which they gave notice to the corporation on December 8, 1886; that the corporation made a complaint to the county commissioners of Middlesex for a reduction of the valuation by the assessors of all its real estate and machinery, and for an abatement of the tax, and filed the same with the clerk of the commissioners on December 17, 1886; that notice of the complaint was duly given, and the petitioner appeared before the commissioners at the hearing thereon; that the commissioners found that the corporation did not file with the assessors a list of its estate liable to taxation in the city for the year 1886, subscribed and sworn to, within the time specified by the assessors in their notice for bringing in such lists; that the commissioners also found that there was no good cause why such list was not seasonably brought in or filed by the corporation; and that thereupon the petitioner moved that the complaint be dismissed, on the ground that no such list had been brought in or filed by the corporation with the assessors within the time specified by them, and no good cause had been shown why such list had not been seasonably brought in or filed; but the commissioners overruled the motion, and ruled that they had jurisdiction in the premises, and legal right and authority to hear and determine the matter of the complaint, upon the ground that the tax commissioner had placed a lower value than the assessors upon the property of the corporation, and so notified the corporation, and ordered the hearing to proceed.

The petition also alleged that the assessors valued all the machinery and real estate of the corporation in various lots; that at the hearing before the commissioners, and before any evidence was offered, the corporation filed an amendment to its complaint, which set forth that four lots only, covering its cotton and print yards, so called, were overrated, and that "your petitioner will not contend at this hearing as to the assessment of its other property by said assessors"; and that the amendment was allowed by the commissioners, against the objection of the petitioner that they had no right or authority to allow the same, and that it was too late so to do.

The petition further alleged, that the corporation, at the hearing before the commissioners, called as a witness Charles H. Dalton, who then was and had been the treasurer of the corporation

since October, 1877, and previously thereto for more than twenty years had been treasurer and manager of similar corporations, but had not bought or sold any land for manufacturing purposes in Lowell ; and that he was permitted to testify, against the objection of the petitioner on the ground that it was incompetent and irrelevant, as to the number of shares of stock in the corporation held by trustees, guardians, charitable institutions, corporations, and individuals, as to what was the market value of the stock on or just before May 1, 1886, and as to what the corporation's land in its cotton and print yards was worth for manufacturing purposes.

The petition further alleged, that the petitioner offered to show by competent evidence the fair cash value of all the real estate and machinery of the corporation on May 1, 1886, but the evidence, against the objection of the petitioner, was excluded by the commissioners ; that the commissioners ruled that, under the amendment to the complaint, they were limited in their inquiry and determination to the fair cash value of the property specified in the amendment, but that they would hear the evidence as bearing upon the value of the property in the cotton and print yards ; that the commissioners also ruled that, as matter of law, they could not determine the true value of all the real estate and machinery on that day ; that the commissioners further ruled that the inquiry before them was not to determine the true value of all the real estate and machinery, or to determine between the valuations thereof made by the tax commissioner and the assessors, but only the value of the items of property of the valuation of which the petitioner complained ; that the commissioners further ruled that the petitioner was bound by the valuation by the assessors of all property not included in the amendment to the complaint ; and that the commissioners, upon evidence of the fair cash value of the real estate and machinery specified in the amendment to the complaint, abated a certain portion of the tax.

The petition averred that the commissioners erred in making the abatement, for the following reasons : "1. In that they overruled the motion of said petitioner to dismiss said petition. 2. In that they ruled that, notwithstanding no list had been brought in as aforesaid, and no good cause had been shown

why the same had not been seasonably brought in or filed, they had jurisdiction in the premises, and legal right and authority to hear and determine the matter of said petition. 3. In that they allowed said amendment to said complaint. 4. In that they admitted the evidence aforesaid of Charles H. Dalton. 5. In that they excluded the evidence of said city to show the fair cash value of all said real estate and machinery on May 1, 1886, except for the purposes aforesaid. 6. In that they ruled, as matter of law, that they could not hear evidence or determine the true value of all said real estate and machinery on May 1, 1886. 7. In that they ruled that the inquiry before them was not to determine the true value of all said real estate and machinery on May 1, 1886, or to determine between the valuation made by said tax commissioner of all said real estate and machinery, and the valuation of the same made by said assessors. 8. In that they did not find and determine the value of all said real estate and machinery. 9. In that they, without hearing evidence as to the true value of all said real estate and machinery, undertook to find its true value. 10. In that they entertained jurisdiction of said company's petition filed as aforesaid. 11. In that they abated a portion of the tax on said machinery. 12. In that they abated any portion of the tax."

IN THE SECOND CASE, the petition was substantially like that in the first case, except that it alleged that the Boott Cotton Mills, which was the corporation assessed, brought in to the assessors a list of all its estate liable to taxation in 1886 within the time specified by the assessors; and that, at the hearing before the commissioners on its complaint for an abatement of the tax and an amendment thereto, the corporation called as a witness Charles J. Goodwin, agent of the Indian Orchard Cotton Mills, who, after testifying that he had been agent of these mills since 1868, and had been engaged in cotton manufacturing in New Hampshire for thirty years prior thereto, and had not examined the land of the corporation, was permitted to testify, against the objection of the petitioner that the same was incompetent, that he thought that twenty cents a foot would be the outside price of land in Massachusetts for manufacturing purposes.

IN THE THIRD CASE, the petition was substantially like that in the first case, except that the Tremont and Suffolk Mills, which was the corporation assessed, at the hearing before the commissioners on its complaint for an abatement of the tax and an amendment thereto, called as a witness Henry F. Coe, formerly agent of the Washington Mills of Lawrence, who, after testifying that he had had to do with the purchase of mills with water power in Lawrence and in Vermont, was permitted to testify, against the objection of the petitioner that it was incompetent, what mill water power was worth in Lawrence.

An answer filed to the petition in each case by the commissioners alleged " that the facts and rulings therein set forth are correctly stated, and that the copies thereto annexed are true copies of the originals, and that no error appears upon their record, and that said petition does not set forth any legal cause for granting the prayer thereof." Hearing upon the petitions and answers before *Devens*, J., who reserved the cases for the consideration of the full court.

*J. N. Marshall*, ( *W. F. Courtney* with him,) for the petitioner.

*T. L. Livermore*, for the corporations.

*H. C. Bliss*, Assistant Attorney General, for the Commonwealth.

MORTON, C. J.  The object of the thirteenth chapter of the Public Statutes is to provide for an excise or duty upon the franchises of corporations payable to the Commonwealth. *Commonwealth v. Hamilton Manufacturing Co.* 12 Allen, 298. The provisions which affect this case are contained in §§ 38 to 41. The general scheme of the statute is that the tax commissioner shall determine in the first instance the taxable value of the franchise. To do this he is to ascertain the fair market value of all the shares of the capital stock of the corporation, and deduct therefrom an amount equal to the value, as determined by him, of its real estate and machinery subject to local taxation. For this purpose he may take the amount at which such real estate and machinery are assessed at the place where they are located, but such local assessment is not conclusive upon him.

It is clear that, under the provisions thus far referred to, if the valuation of the tax commissioner of the real estate and machinery is less than the valuation by the local assessors, the corporation

would be subjected to double taxation on a part of its property. To prevent this injustice the statute provides that in such case the tax commissioner shall notify the corporation, which may within one month after the date of such notice apply to the local assessors for an abatement of the local tax, and, if they refuse to grant an abatement, may forthwith appeal to the county commis-sioners, whose decision is final, and conclusive upon all parties. When the case gets before the county commissioners, the corporation may have no interest in the question, and can have but a slight interest. The tax commissioner on behalf of the Commonwealth, and the town or city in which the real estate and machinery are located, become the actors and parties interested, the main object of the hearing being to determine what valuation shall be binding upon each of them, thus affecting the amount of the excise or tax which each is entitled to assess and collect. Such being the purposes and character of the statute, we do not think that it was the intention of the Legislature that the appeal should be defeated by the previous failure of the corporation to file a sworn list of its property under § 72 of c. 11 of the Public Statutes.

The statute we are considering provides that the tax commissioner shall notify the corporation of his determination, "and if it does not, within one month from the date of such notice, make application to said assessors for an abatement, and does not, in case of the refusal of said assessors to grant an abatement, forthwith prosecute an appeal in accordance with the provisions of section seventy-one of chapter eleven, and give notice thereof to the tax commissioner, such determination shall be conclusive upon said corporation." Pub. Sts. c. 13, § 41. Section 71 of the Pub. Sts. c. 11, provides that, "if the assessors refuse to make an abatement to a person, he may, within one month thereafter, make complaint thereof to the county commissioners by filing the same with their clerk, and if upon a hearing it appears that the complainant is overrated, the commissioners shall make such an abatement as they deem reasonable." This, standing alone, gives the unlimited right to apply to the county commissioners for an abatement of the valuation of the assessors, and points out the way in which this may be done. Section 72 of the Pub. Sts. c. 11, provides that no abatement shall be had unless the person

has filed a sworn list with the assessors. Section 41 of the Pub.
Sts. c. 13, refers only to the Pub. Sts. c. 11, § 71, and adopts the
mode therein established for the revision of the valuation of the
assessors. It does not directly refer to § 72, or provide that
the failure to file a sworn list shall defeat the right to an
abatement.

The two chapters have different purposes in view ; and we do
not think we can read in the thirteenth chapter by construction
such a provision, thus subjecting the corporation to double taxa-
tion. Such a construction would defeat the main purpose of the
Legislature, which is to adjust as between the Commonwealth and
the town or city the proportions of the whole tax or excise to be
paid by the corporation, and not to expose it to double or exces-
sive taxation. We are therefore of opinion that the county com-
missioners correctly ruled that their jurisdiction was not defeated
by the fact that the corporation had without excuse failed season-
ably to file with the assessors a sworn list of its property.

The petitioner also contends that the county commissioners
had no jurisdiction, because the corporation did not seasonably
file its complaint with the clerk. The statute provides that, " if
the assessors refuse to make an abatement to a person, he may,
within one month thereafter," file his complaint. The facts as
stated in the petition are, that the corporation applied to the
assessors for an abatement on October 19, 1886 ; that a hearing
was had on October 28, 1886 ; and that the "assessors on No-
vember 16, 1886, refused to grant said abatement, of which they
gave notice to said company, December 8, 1886." The complaint
was filed on December 17, 1886, which we think was seasonable.
The assessors do not keep records of such transactions, which,
like those of a court of justice, are notice to the world. It
would be a hardship upon applicants to make their rights depend
upon the secret action of the assessors without any notice to
them, and the assessors can easily give them notice of the re-
fusal. The assessors of Lowell understood this to be their duty,
and we think that their notice on December 8 was the completion
of their act of refusal, and that the corporation was entitled to
file its complaint within one month from that date.

The assessors of Lowell, in assessing the property of the cor-
poration, made separate valuations of different lots or parcels

of the property. After filing its complaint to the county commissioners, the corporation filed an amendment, by which it limited its complaint to four specified parcels of property, which it alleged was assessed above its fair value, and alleged that it would not contend as to the assessment of its other property by the assessors. The amendment is in effect nothing but a waiver of its objections to the assessment of all its property not specified therein. It was properly allowed, and the petitioner has no ground of complaint. It might restrict the corporation in its proofs to the parcels named in it, but it could not affect the rights of the petitioner either as to these or as to the parcels not named in it.

The ground of the objection to it is, that under the original complaint the county commissioners were required to reassess the value of all the parcels, and that the petitioner had the right to show that some of them were undervalued by the assessors, and should be valued and assessed at a larger sum. But this ground cannot be maintained. The statute provides for an application to the assessors " for an abatement," and, if this is refused, for a complaint in the nature of an appeal to the county commissioners. The word " abatement " is used in the same sense in which it is used in the other parts of the tax statutes. Authority is not given to the assessors nor to the county commissioners to make a revaluation of the whole property, but only to make an abatement in the same manner in which they may abate under the Pub. Sts. c. 11.

It was held in *Lowell* v. *County Commissioners*, 3 Allen, 546, that, where a tax is assessed upon an individual or a corporation by a valuation of the separate parcels of real estate belonging to them, and the complainant proves that any one or more is overvalued, he is entitled to an abatement, and that the inquiry whether other lots have been valued at too low a rate is not open to the town or city. It cannot ask that the valuation on other property of the complainant shall be raised in order to make a set-off against that part of the assessment which is shown to be excessive. Neither the assessors nor the county commissioners have any jurisdiction or authority to increase the valuation or assessment made by the assessors on any parcel of property. The decision and reasoning of the court in that case

are applicable to and decisive of the case at bar on this point. Neither under the original complaint nor under the amendment could the city show that its assessors had valued and assessed some of the parcels at too small an amount. The rulings of the county commissioners upon this point were therefore correct.

The petitioner before the county commissioners objected to certain testimony of Charles H. Dalton. It appears by the record that the commissioners adopted the proper test, that is, the fair cash value of the property on the 1st of May. They had the right to consider its value for manufacturing, as well as for other purposes. The question whether the witness had sufficient knowledge of the value of property to enable him to give his judgment upon the matter in question, was largely for their determination, and within their discretion, and we cannot see that this discretion was wrongfully exercised. *Swan* v. *Middlesex*, 101 Mass. 173. It is difficult to see how the testimony of the witness as to the market value of the shares of the corporation was admissible upon the issue pending before the commissioners; but it is equally difficult to see, from anything disclosed in the record before us, that its admission was prejudicial to the petitioner. It was not used as a test of the value of the property of the corporation, as in *Chicopee* v. *County Commissioners*, 16 Gray, 38. There was much other evidence as to the value.

A petition for a writ of certiorari is addressed to the discretion of the court; and it has always been the practice, when unimportant evidence has been erroneously admitted, to refuse the writ of certiorari, unless it appears that the petitioner has been prejudiced by its admission, or if it appears that the findings are justified by the other evidence. *Cobb* v. *Lucas*, 15 Pick. 1. *Gleason* v. *Sloper*, 24 Pick. 181. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206.

Upon the whole case, we are of the opinion that substantial justice does not require that the writ should issue. To prevent this case from being used as a precedent as to the proper mode of proceeding, we refer to the fact that the case is not brought before us in proper form. Instead of answering, the county commissioners should make a return stating their rulings and proceedings. *Tewksbury* v. *County Commissioners*, 117

Mass. 563. But as all parties are desirous of an early decision of the merits, we overlook the error in form.

In the first case, and in the second case, which is governed by the first, the entry must be *Petitions dismissed.*

All the questions raised in the third case, except that as to the admissibility of the testimony of Henry F. Coe, are considered, and decided in the first case. He was permitted to testify " what mill water power was worth in Lawrence." If the conditions which affect the value of water power are substantially the same in Lawrence as in Lowell, his testimony would aid the county commissioners in determining its value in Lowell. It does not appear that the conditions are not the same, and therefore the petitioner fails to show that the evidence was incompetent.            *Petition dismissed.*